BC

RECEIVED
7/27/2026
EK
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ERIC CONNOR SUNDMAN,** | Case No. 1:26-cv-06690 |
| Plaintiff, Pro Se | Judge Joan H. Lefkow |
| v. | Magistrate Judge Daniel P. McLaughlin |
| **NATIONAL CREDIT SYSTEMS, INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

# FIRST AMENDED COMPLAINT

Plaintiff Eric Connor Sundman (hereinafter "Plaintiff"), appearing pro se, brings this action against Defendant National Credit Systems, Inc. (hereinafter "Defendant" or "NCS"), for statutory damages, actual damages, and punitive damages pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.

## I. JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, which confer federal question jurisdiction upon United States District Courts.
2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this judicial district and a substantial part of the events, omissions, and concrete financial, exclusionary housing, and severe professional injuries giving rise to these claims occurred within the Eastern Division of the Northern District of Illinois.

## II. PARTIES

3. Plaintiff Eric Connor Sundman is a natural person, a consumer, and a resident of the City of Chicago, Cook County, Illinois. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).
4. Defendant National Credit Systems, Inc. is a foreign business corporation regularly engaged in the collection of consumer debts throughout the United States using the instrumentalities of interstate commerce and the mails, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant is also a "furnisher of information" to consumer reporting agencies under 15 U.S.C. § 1681s-2.

## III. FACTUAL ALLEGATIONS

5. The underlying matter arises from a purported consumer debt allegedly originating from a residential lease agreement with Queen City Townes Apartments.
6. This purported debt constitutes a "debt" under 15 U.S.C. § 1692a(5) because it reflects an obligation incurred primarily for personal, family, or household purposes.

7. On or about November 26, 2025, Defendant transmitted an initial collection correspondence regarding the purported consumer debt, which was received by Plaintiff on or about December 8, 2025.
8. This initial correspondence explicitly stated: "If you write to us by January 5, 2026, we must stop collection on any amount you dispute until we send you information that shows you owe the debt."
9. On December 8, 2025, well within the statutory thirty-day window established under 15 U.S.C. § 1692g(a), Plaintiff executed Defendant’s provided dispute form, checking the boxes indicating "I want to dispute the debt" and "This is not my debt", and subjoining a handwritten instruction stating "DO NOT CONTACT".
10. Defendant successfully received Plaintiff’s formal dispute at its corporate office via mail on December 16, 2025 (See Exhibit A).
11. Defendant explicitly admitted in Paragraph 14 of its judicial Answer that it received and processed the dispute and verification request on or about December 18, 2025.
12. Pursuant to 15 U.S.C. § 1692g(b), upon receipt of a consumer's written dispute within the thirty-day window, a debt collector shall cease collection of the debt until the debt collector obtains verification of the debt and a copy of such verification is mailed to the consumer by the debt collector.
13. Under established federal law, a consumer's accompanying request to cease communication does not strip a debt collector of its right, nor absolve it of its absolute statutory obligation, to mail the required debt verification to the consumer. Mailing a mandatory statutory verification notice does not constitute an unlawful collection contact under a cease and desist order, and a debt collector cannot use a cease and desist request as an administrative pretext to bypass the mandatory mailing requirement while actively continuing backend reporting.
14. In Paragraph 15 of its judicial Answer, Defendant explicitly admitted that its verification process consisted entirely of internally confirming data with the Original Creditor on or about December 22, 2025.
15. Defendant's pleading contains no assertion, and internal records confirm, that Defendant ever mailed a copy of such verification to the Plaintiff as strictly mandated by 15 U.S.C. § 1692g(b).
16. Defendant attempts to shield itself from liability by asserting it applied an internal "XB" Metro2 compliance code to denote a consumer dispute (See Answer, AD8).
17. Under the FCRA, 15 U.S.C. § 1681s-2(b), and the FDCPA, 15 U.S.C. § 1692e(8), the mere application of a dispute notation code does not absolve a debt collector of its separate, absolute statutory obligation to cease reporting entirely under a § 1692g(b) validation freeze, nor does it sanitize the transmission of unverified collection data to consumer reporting agencies.
18. Defendant further attempts to evade its statutory duties by asserting that the underlying debt belongs to the Original Creditor and that Plaintiff's dispute represents an improper "collateral attack" requiring Defendant to act as a tribunal (See Answer, AD4).
19. A debt collector's statutory obligation to verify a debt and halt collection under 15 U.S.C. § 1692g(b) is an independent, strict liability mandate that cannot be bypassed or shifted back to the original landlord.
20. Despite completely failing to execute the mandatory statutory mailing requirement, Defendant entirely ignored the statutory freeze and actively reported, updated, and

maintained a damaging collection trade line on Plaintiff's consumer credit profiles across Equifax, Experian, and TransUnion monthly from January 2026 through at least July 2026 (See Exhibit J).

21. In its June 2, 2026 administrative response to Plaintiff's Consumer Financial Protection Bureau (CFPB) complaint, Defendant explicitly admitted that it ignored the statutory freeze by confirming it continued to process the account and maintain the reporting based on unverified data from the original creditor, while concurrently refusing to provide verification to Plaintiff under an alleged "confidentiality" justification (See Exhibit I).
22. Defendant’s assertion of "confidentiality" to withhold debt validation from the targeted consumer is a bad-faith distortion of federal law. Under 15 U.S.C. § 1692g(b), the mandate is absolute: a collector must either provide the verification to the consumer or completely cease all collection and reporting activities.
23. Irrespective of any backend reporting codes, the prominent placement and monthly maintenance of the unverified collection trade line operated as an absolute bar to housing eligibility.
24. On May 7, 2026, as a direct and proximate result of Defendant’s unlawful, unverified credit reporting, Plaintiff suffered concrete financial and exclusionary injury when he received a formal Adverse Action notice from Linea Apartments, denying his rental housing application explicitly due to the "Collection from Apartment Community" reported by Defendant (See Exhibit D).
25. On May 18, 2026, Plaintiff transmitted a formal administrative letter to Defendant via certified mail, delivered on May 20, 2026, offering a good-faith settlement to resolve the matter and avoid litigation (See Exhibits C, E.1, E.2, and F). Defendant allowed the window to lapse without responding and subsequently asserted in Paragraph 22 of its judicial Answer that it possessed no obligation to respond to such an offer.
26. Defendant has maintained and continues to actively report the unverified collection trade line even after being formally served with the initial Complaint, and notably after filing its formal Answer in this action on July 21, 2026, in ongoing, reckless, and willful defiance of the FDCPA statutory freeze and independent regulatory requirements.
27. As a direct result of Defendant's ongoing, willful illegal reporting, Plaintiff faces severe downstream professional damage and an active, operational threat to his professional standing, including potential regulatory investigation and licensure revocation. The ongoing publication of this unverified collection trade line directly compromises Plaintiff's mandatory disclosures under the character and financial suitability requirements of the Illinois Gaming Board, thereby creating an immediate threat to his specialized credentials and livelihood. Consequently, Plaintiff has suffered concrete actual damages in the baseline amount of $100,000.00.

**COUNT I**

Violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g(b)

Failure to Cease Collection Activities During Statutory Validation Freeze

28. Plaintiff realleges and incorporates by reference paragraphs 1 through 27 as if fully set forth herein.

29. Pursuant to 15 U.S.C. § 1692g(b), Defendant was strictly mandated to cease all collection activities, including credit reporting, until it obtained verification of the debt and mailed a copy of such verification to the Plaintiff.
30. Defendant was at all times, within its legal rights, and under an absolute statutory obligation, to mail the validation documentation to Plaintiff regardless of the accompanying cease and desist instruction, as a required response to a consumer dispute is an exempted statutory communication under 15 U.S.C. § 1692c(c).
31. Defendant admits it received the dispute on or about December 18, 2025, but failed to mail any verification of the debt to Plaintiff, choosing instead to internally verify the data with the original landlord on December 22, 2025.
32. Despite failing to execute the mandatory statutory mailing requirement, Defendant actively reported, updated, and maintained the collection trade line on Plaintiff's Equifax, Experian, and TransUnion credit profiles monthly from January 2026 through at least July 2026.
33. Under established federal jurisprudence, updating, reporting, or maintaining a trade line with a consumer reporting agency after a timely validation request is received, but before verification is mailed to the consumer, constitutes a prohibited "collection activity" under 15 U.S.C. § 1692g(b). See Purnell v. Arrow Financial Services, LLC, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); see also Quale v. Unifund CCR Partners, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010).
34. Furthermore, this prohibition is explicitly codified by the Consumer Financial Protection Bureau under Regulation F, 12 C.F.R. § 1006.38, which strictly prohibits a debt collector from reporting or communicating information about a debt to a consumer reporting agency after receiving a timely written dispute until the mandatory verification is mailed to the consumer.
35. As a direct and proximate result of Defendant's willful violations of 15 U.S.C. § 1692g(b), Plaintiff suffered severe actual damages, including emotional distress, loss of credit opportunities, the denial of his housing application at Linea Apartments on May 7, 2026, and acute professional risk, including potential license revocation and threat to his professional credentials caused by the ongoing publication of an unverified collection trade line, totaling an amount of no less than $100,000.00.

**COUNT II**

Violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(8)

Publication of False, Inaccurate, or Unverified Credit Information

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 as if fully set forth herein.
37. 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.
38. Specifically, 15 U.S.C. § 1692e(8) prohibits communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

39. Defendant knew or should have known that the debt was unverified and subject to a mandatory statutory freeze, rendering any ongoing positive validation to consumer reporting agencies false and misleading.
40. Defendant's internal allocation of backend Metro2 reporting codes (such as an "XB" dispute notation) does not insulate it from liability where the collector concurrently transmits active, damaging collection updates while completely failing its absolute statutory mandate to provide verification. See Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317 (7th Cir. 2016) (confirming that FDCPA mandates are strict liability and debt collectors cannot evade compliance duties by pointing to the files or instructions of the original creditor).
41. Defendant willfully and/or negligently communicated inaccurate, unverified collection data to Equifax, Experian, and TransUnion monthly from January 2026 through at least May 2026.
42. As a direct and proximate result of Defendant's willful violations of 15 U.S.C. § 1692e(8), Plaintiff suffered concrete economic and non-economic injuries, including the denial of essential housing and severe professional reputational harm, causing actual damages of no less than $100,000.00.

**COUNT III**

Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b)

Failure to Conduct a Reasonable Investigation After Receiving Notice of Dispute

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.
44. Upon receiving notice of a consumer dispute from a credit reporting agency regarding the accuracy or completeness of information furnished, 15 U.S.C. § 1681s-2(b) requires a furnisher to conduct a reasonable investigation, review all relevant information provided, and modify, delete, or permanently block inaccurate or unverified data.
45. Defendant received automated notices of dispute from Equifax and TransUnion regarding Plaintiff's account.
46. Defendant's investigation was legally insufficient, unreasonable, and executed with reckless disregard because it consisted solely of internally mirroring the Original Creditor's unverified data on December 22, 2025, while failing to cross-reference its own omission of the mandatory FDCPA validation mailer.
47. Defendant willfully and/or negligently verified the unverified debt to the consumer reporting agencies, causing the continued publication of a damaging and inaccurate collection trade line.
48. As a direct and proximate result of Defendant's willful failure to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b), Plaintiff was denied housing at Linea Apartments, suffered ongoing damage to his credit reputation, and sustained severe threat to his professional compliance credentials, resulting in actual damages of no less than $100,000.00.

**COUNT IV**
Ongoing and Willful Violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g(b) and 1692e

Post-Filing Willful Non-Compliance

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.
50. Defendant was formally served with the Initial Complaint in this action, providing actual, undeniable legal notice of its ongoing statutory violations, its failure to mail validation, and the concrete housing injury caused to Plaintiff.
51. Despite possessing actual notice via formal judicial service and further confirmed by the filing of its formal judicial Answer on July 21, 2026, Defendant deliberately elected to maintain, update, and actively publish the unverified, disputed collection trade line to Equifax, Experian, and TransUnion.
52. Each monthly update and transmission of credit data executed by Defendant after the filing, service, and answering of this action constitutes a separate, independent, and willful violation of the FDCPA statutory freeze under 15 U.S.C. § 1692g(b) and the prohibition against misleading representations under 15 U.S.C. § 1692e. See Consumer Financial Protection Bureau (CFPB) Regulation F, 12 C.F.R. § 1006.38.
53. Defendant's continued reporting post-service and post-answer cannot be characterized as a bona fide operational error; rather, it represents a conscious decision to flout federal statutory mandates in open defiance of an active lawsuit.
54. Defendant's post-filing conduct demonstrates a reckless and willful disregard for Plaintiff's federally protected rights under the FDCPA.
55. As a direct and proximate result of Defendant's ongoing, post-filing, and post-answer violations, Plaintiff has suffered extended and compounding damage to his credit reputation, prolonged emotional distress, the continuous exclusion from housing opportunities, and a continuous operational threat to his professional licensure, entitling Plaintiff to maximum statutory damages and compounding actual damages of no less than $100,000.00.

**PRAYER FOR RELIEF**
WHEREFORE, Plaintiff Eric Connor Sundman respectfully requests that this Court enter judgment in his favor and against Defendant National Credit Systems, Inc., and award the following relief:

A. Actual damages in the baseline amount of $100,000.00 for financial loss, housing exclusion, acute professional injury, and emotional distress;
B. Statutory damages pursuant to 15 U.S.C. § 1692k and 15 U.S.C. § 1681n;
C. Punitive damages pursuant to 15 U.S.C. § 1681n in an amount to be determined at trial to punish Defendant's willful, bad-faith statutory non-compliance and continued illegal credit reporting;

D. An order directing Defendant to immediately and permanently delete the unverified trade line from Equifax, Experian, and TransUnion;
E. Pre-judgment and post-judgment interest;
F. An award of costs incurred in maintaining this action pursuant to 15 U.S.C. § 1692k(a)(3) and 15 U.S.C. § 1681n(a)(3); and
G. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 27, 2026
Respectfully submitted,
By: /s/ Eric Connor Sundman
Eric Connor Sundman
Plaintiff Pro Se

225 W Huron St Apt 202
Chicago, IL 60654
919-397-0213
eric.sundman.prose@gmail.com

INDEX OF EXHIBITS

| Exhibit Designation | Description of Evidence / Document Title |
|---|---|
| Exhibit A | USPS Tracking Confirmation and Delivery Receipt for Initial Dispute Letter |
| Exhibit B | National Credit Systems, Inc. Initial Collection Notice and Dispute Form |
| Exhibit C | Certified Mail Receipt and USPS Tracking Log for Formal Settlement Notice |
| Exhibit D | Linea Apartments Rental Housing Application Denial and Adverse Action Notice |
| Exhibit E.1 | Formal Notice of Credit Reporting Violations and Settlement Proposal |
| Exhibit F | Certified Mail Delivery and Reception Logs for May 18 Correspondence |
| Exhibit G | Residential Utility Account Statements and Verified Billing Payment History |
| Exhibit H | Written Transaction and Status Account History Notification from Creditor |
| Exhibit I | Consumer Financial Protection Bureau Case Disposition and Defendant Response |
| Exhibit J | Consumer Credit Profile Transcripts Reflecting Account Reporting Timeline Up to May 2026 |

|Exhibit K| Consumer Financial Protection Bureau Administrative Complaint Record |
|Exhibit L| Experian Credit Report Snapshot (Reported July 26th, 2026 |
|Exhibit M| TranUnion Credit Report Snapshot via Credit Karma (Reported July 19th 2026) |
|Exhibit N| EquiFax Credit Report Snapshot via Credit Karma (Reported July 24th, 2026)|

EXHIBIT A



# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

**9589071052701906530766**

**Copy** **Add to Informed Delivery (https://informeddelivery.usps.com/)**

## Latest Update

Your item has been delivered and is available at a PO Box at 4:32 pm on December 16, 2025 in MARIETTA, GA 30006.

Feedback

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

## Delivered

**Delivered, PO Box**

MARIETTA, GA 30006
December 16, 2025, 4:32 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

# USPS Tracking®

FAQs ›

Tracking Number:

Remove ✕

## 9589071052701906530766

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item has been delivered and is available at a PO Box at 4:32 pm on December 16, 2025 in MARIETTA, GA 30006.

Feedback

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, PO Box**

MARIETTA, GA 30006
December 16, 2025, 4:32 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers



EXHIBIT B




Free: (800) 459-1539
Thursday 8:00 am - 7:00 pm EST
day 8:00 am - 5:00 pm EST

November 25, 2025
Account Number: 6038159
NCS Default Password (for website): 97E5A5E7

ebt collector. We are trying to collect a debt that you owe to QUEEN CITY TOWNES APTS /
e will use any information you give us to help collect the debt.

rmation shows:
e QUEEN CITY TOWNES APTS / HAVEN with
nt number 655

| | |
|---|---|
| 10/22/2025 you owed: | $9472.63 |
| en 10/22/2025 and today: | |
| ere charged this amount in interest: + | $0.00 |
| ere charged this amount in fees: + | $0.00 |
| aid or were credited this amount toward ot: - | $0.00 |
| amount of the debt now: | $9472.63 |

**How can you dispute the debt?**

**Call or write to us by January 5, 2026, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.

**If you write to us by January 5, 2026,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at www.nationalcreditsystems.com.

**What else can you do?**

**Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by January 5, 2026, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at www.nationalcreditsystems.com.

**Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

**Contact us about your payment options.**

ce: See reverse side for important information.

**How do you want to respond?**

*Check all that apply:*

- ☑ **I want to dispute the debt because I think:**
  - ☑ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on reverse or attach additional information).
- ☐ **I want you to send me the name and address of the original creditor.**
- ☐ **I enclosed this amount:** $

Make your check payable to National Credit Systems.
Include the Reference #: 6038159

DO NOT CONTACT

HANGE SERVICE REQUESTED

ERIC SUNDMAN
4619 DOROTHY PL # 1
BUFFALO NY 14219-1309

**Mail this form to:**

NATIONAL CREDIT SYSTEMS, INC.
PO BOX 672288
MARIETTA GA 30006

ATL13S-1125-2248306557-03411-3411

EXHIBIT C


4:25
◂ Safari
tools.usps.com

# USPS Tracking®

FAQs ›

Remove ✕

Tracking Number:

**9589071052703851332716**

Copy  Add to Informed Delivery

## Expected Delivery by

**MONDAY**

**18** May 2026 ⓘ

by **9:00pm** ⓘ

USPS is now in possession of your item as of 3:35 pm on May 15, 2026 in BOONE, NC 28607.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

- Delivered
- Out for Delivery
- Preparing for Delivery
- In Transit
- ...cepted
  ...SPS in possession of item
  BOONE, NC 28607

EXHIBIT D

10:13

81372905_Eric_Sundman_R_202605...

Linea Apartments
215 W. Lake St.
Chicago IL 60606-1859

MAY 07, 2026

Eric Connnor Sundman
4619 Dorothy PL
Buffalo NY 14219

Dear Eric Connnor Sundman,

Thank you for your recent rental application. You authorized us to obtain a tenant screening report containing credit and other information about you to help us evaluate whether you meet the rental criteria for the property where you applied. If a copy of our screening criteria was not already provided to you, please contact the property for this information.

Your rental application was declined because you **or** the group you applied with did not meet the property's minimum rental requirements. For privacy reasons, this letter only discloses your individual results to you. If you applied as part of a group, this letter does not include the individual results for any other member of your group.

Your individual result was affected by:

*Rental History Does Not Meet Property Requirements
*Collection from Apartment Community

**Note**: If you applied with a group and your individual result is **not** listed above, it means your individual information was **not** a negative factor in the group decision.

Because your individual or group application was declined, we are required by the Fair Credit Reporting Act, 15 U.S.C. section 1681 et seq. to provide you with this adverse action letter.

Although we are solely responsible for our rental decision, it was based in whole or in part on information contained in a tenant screening report provided to us by:

**RentGrow, Inc.**
PO BOX 1675
Hicksville, NY 11802-1675
(800) 898-1351
http://www.rentgrow.com

Because we made the decision about your rental application, RentGrow cannot address the specific reasons for our decision. However, you can contact RentGrow directly to get a copy of your tenant screening report. If you applied as part of a group, please note that RentGrow will not share your tenant screening report with any other group member and will not share any other group member's screening report with you. You also have the right to:

* Obtain a free copy of your tenant screening report from RentGrow by contacting them directly within 60 days of receipt of this notice.

* Contact RentGrow directly to initiate a dispute of any information in your tenant screening report you believe is inaccurate or incomplete.

* Obtain a free copy of your credit report directly from Experian, which provided it to RentGrow, if you request it from the credit bureau within 60 days from the date of this notice. The credit bureau's contact information is listed on your tenant screening report and is also readily available on-line.

You may also have additional rights under the credit reporting or consumer protection laws in your state. For more information, please contact your state or local consumer protection agency or state attorney general's office.

CREDIT SCORE DISCLOSURE
If your tenant screening report includes a VantageScore®, our decision may also have been based in whole or in part on that score. Your credit score is a number between 300 and 850 and is a reflection of the information in your credit report and can change depending on how the information in your credit report changes. RentGrow plays no role in how your credit score is determined.

* Your credit score: 638
* Date of your credit score: 05/07/2026 12:49:18 PM
* Source of your credit score: Experian
* Key factors that adversely affected your credit score: Total of all balances on bankcard or revolving accounts is too high; The total of all balances on your [illegible] sufficient relevant real estate accoun[illegible] [illegible]rmation; Balances on bankcard/[illegible] credit limits; The number of inq[illegible] [illegible] factor, but effect was not sig[illegible]

Preview

Thank you.

EXHIBIT E

**Eric Sundman**

**esundman@outlook.com**

**May 15, 2026**

**VIA CERTIFIED MAIL**

National Credit Systems, Inc.
P.O. Box 672288
Marietta, GA 30006

**RE: Account Number: 6038159 Notice of Improper Credit Reporting and Formal Settlement Offer**

To Whom It May Concern,

I am writing as a follow-up to my formal dispute of the above-referenced account. Your initial correspondence was received on December 9, 2025. My response—which included a formal dispute of the debt—was confirmed delivered via USPS tracking on December 12, 2025. I have not only proof of me disputing the debt using your provided form, but also independent USPS confirmation of that notice being delivered to your offices on that date.

Despite this timely formal dispute, delivered within three days and well before the 60-day timeframe specified in your own letter, National Credit Systems (NCS) improperly reported this debt to the credit bureaus in January. This reporting occurred while the account was legally disputed and without the mandatory "disputed" designation. For the past four months, NCS has knowingly communicated inaccurate credit information to all major bureaus.

Having successfully litigated and secured judgments against other collection firms for similar improper reporting violations, I am well-versed in the statutory requirements and my rights under the law. Such conduct by NCS constitutes a direct violation of:

- **The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(8):** Prohibiting the communication of credit information known to be false, specifically the failure to communicate that a debt is disputed.
- **Unfair, Deceptive, or Abusive Acts or Practices (UDAAP) under the Dodd-Frank Act:** NCS's failure to accurately report the status of a disputed debt constitutes a deceptive and unfair practice by providing misleading information to credit repositories, which significantly harms consumer financial standing.
- **The North Carolina Collection Agency Act (NCCAA), N.C.G.S. § 58-70-95(3) & § 58-70-130:** Prohibiting false accusations to a credit reporting agency. Under § 58-70-130, NCS is liable for civil penalties between $500 and $4,000 per violation.

Please be advised that the cumulative statutory fines for these violations, particularly when considering the civil penalties for willful negligence under the NCCAA and the ongoing nature of these FDCPA and UDAAP violations over the last four months, would exceed the current balance of the alleged debt.

To resolve this matter with as little friction and back and forth as possible, I am offering a one-time $4,000.00 settlement in full satisfaction of this account. This offer is contingent upon the following:

1. **Full Satisfaction:** Acceptance of $4,000.00 constitutes full and final payment of the alleged debt.
2. **Credit Erasure & Written Confirmation:** NCS must completely delete the trade line associated with this account from all credit bureaus (Equifax, Experian, and TransUnion) within 10 business days of receiving funds. NCS must provide me with written confirmation (Letter of Cure) that the debt has been paid in full and the account balance is zero. This Letter of Cure must be sent to me via email within 24 business hours (Monday through Friday) of your receipt of certified funds. Failure to provide this confirmation within the specified 24-hour window will be considered a deceptive collection practice under **N.C.G.S. § 58-70-115**, for which NCS is liable for civil penalties between $500.00 and $4,000.00 per violation under **N.C.G.S. § 58-70-130**.
3. **Payment Method:** Upon written acceptance of these terms, please provide specific mailing instructions for FedEx Overnight delivery. I will remit payment via certified check within 48 business hours of receiving those instructions.
4. **Limited Communication Authorization:** You are authorized to contact me only via email at esundman@outlook.com with the subject line "settlement agreement." Any communication outside this approved channel will be considered a further violation of the **FDCPA** and the **NCCAA**.
5. **Reservation of Rights:** This offer is made solely to avoid the costs of litigation. If this matter is not considered cured under the terms above within 14 business days, I reserve the right to rescind this settlement offer.

Please be advised that if this matter moves to court, I will seek the full maximum penalties permissible under the law for each individual violation of the FDCPA, UDAAP, and NCCAA statutes, including all applicable civil penalties and reasonable attorney fees.
I hope we can come to reasonable and clear terms to resolve this matter within a very calm and respectful manner. If a written acceptance or declination is not received within 14 business days, I will proceed with formal legal action.

Sincerely,

**Eric Sundman**

EXHIBIT F

9589071052703851332716

2:26 · 45

Copy

## Latest Update

Your item has been delivered and is available at a PO Box at 12:33 pm on May 20, 2026 in MARIETTA, GA 30006.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

## Delivered

**Delivered, PO Box**
MARIETTA, GA 30006
May 20, 2026 12:33 PM

**Delivered to Agent, Front Desk/Reception/Mail Room**
MARIETTA, GA 30006
May 20, 2026 12:30 PM

**Processing at USPS Facility**
MARIETTA, GA 30068
May 20, 2026 5:50 AM

**Arrived at USPS Facility**
MARIETTA, GA 30068
May 20, 2026 3:53 AM

**Departed USPS Facility**
ATLANTA GA DISTRIBUTION CENTER
May 20, 2026 2:44 AM

**Arrived at USPS Facility**
ATLANTA GA DISTRIBUTION CENTER
Ma

tools.usps.com

**Arrived at USPS Facility**
ATLANTA GA DISTRIBUTION CENTER

# EXHIBIT G

## Billing & Payment Activity

*Total amount paid may not reflect payments returned by your financial institution. To View additional bill details please click your View Bill link below.

Activity
All Activity

Export Print

| Date | Description | Amount |
|---|---|---|
| 12/29/25 | Auto Pay Payment ACH | - $64.67 |
| 12/03/25 | Oct 25 to Dec 01 Bill (38 Days) View Bill | $64.67 |
| 11/24/25 | Auto Pay Payment ACH | - $95.19 |
| 10/28/25 | Sep 24 to Oct 24 Bill (31 Days) View Bill | $95.19 |
| 10/20/25 | Auto Pay Payment ACH | - $153.57 |
| 09/25/25 | Aug 23 to Sep 23 Bill (32 Days) View Bill | $153.57 |
| 09/22/25 | Auto Pay Payment ACH | - $155.91 |
| 08/26/25 | Jul 25 to Aug 22 Bill (29 Days) View Bill | $155.91 |
| 08/22/25 | Auto Pay Payment ACH | - $185.14 |
| 07/28/25 | Jun 26 to Jul 24 Bill (29 Days) View Bill | $185.14 |

Site Feedback

EXHIBIT H

**From:** **PetScreening** support@petscreening.com
**Subject:** At Risk: Non-Compliant Profile - Haven Realty Capital - Queen City Townes
**Date:** May 14, 2026 at 8:47 AM
**To:** esundman1113@gmail.com

PetScreening

# SUNDMAN, ERIC

Haven Realty Capital - Queen City Townes requires a completed PetScreening profile to be on record for all leases, even if you do not have a pet or animal. Please complete your profile immediately to comply with your pet policy.

**Your username:** esundman1113@gmail.com
**Required by:** Haven Realty Capital - Queen City Townes

*Please click the button below to create a password, then complete and submit a profile for processing.*

**Create your profile(s)**

---

If you have any questions or need assistance, please feel free to visit our FAQ page.

EXHIBIT I



Verifying the

You can ask fo
keeping copie

Negotiating

Disputing th

Collections
typically af

## 3 inquiries

These lenders h

CITI CA

Inquiry date

Removal date

BK OF A

Inquiry date

Removal date

JPMCB

Inquiry date

Removal date

Status updated
Dec 2025

## Payment summary

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2026 | C | C | C | C | C | - | - | - | - | - | - | - |

PAYMENT HISTORY LEGEND

Comments
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)

Your statement
-

### Contact info

Name
NATIONAL CREDIT SYSTEM

Address
3750 NATURALLY FRESH BLV, ATLANTA GA 30349

Phone number
(404) 629-9595

An official website of the United States Government

Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)

Submit a complaint / Review your complaint

# Review your complaint

Please review the information below before submitting this complaint. You can return to any section to make changes by selecting "Edit this section."

## Step 1

### What product or service is your complaint about?

Edit this section

**PRODUCT OR SERVICE**
Debt collection

**TYPE**
Other debt

## Step 2

### What type of problem are you having?

Edit this section

**ISSUE**

Attempts to collect debt not owed

**TYPE OF ISSUE**

Debt is not yours

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**

Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**

Yes

**WHAT INFORMATION DID YOU REQUEST?**

Debt Validation

**DID THE COMPANY PROVIDE THIS INFORMATION?**

No

---

# Step 3

---

## What happened?

Edit this section

In early December 2025, National Credit Systems, Inc. (NCS) issued an initial collection notice regarding Account No. 6038159 (allegedly originating from Queen City Townes Apts). The notice outlined my statutory right to dispute the debt and established a response deadline of January 5, 2026.

Exercising my rights under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g, I immediately executed the company's provided dispute form, checking the boxes indicating "I want to dispute the debt" and "This is not my debt" (Exhibit B). I explicitly subjoined a clear, handwritten instruction restricting their communication channels ("DO NOT CONTACT" ) (Exhibit B). This written dispute was mailed via the United States Postal Service and tracked under Tracking Number 9589071052701906530766. USPS tracking confirms the dispute package was successfully delivered to NCS's designated PO Box in Marietta, GA 30006 on December 16, 2025, at 4:32 PM (Exhibit A), satisfying their deadline

twenty (20) days early.
Pursuant to 15 U.S.C. § 1692g(b), the receipt of a timely written dispute triggers a mandatory statutory freeze. NCS was legally required to cease all collection activities—including reporting or updating the account on my consumer credit reports—until they obtained and mailed verification of the debt to my address. Furthermore, under 15 U.S.C. § 1692e(8), any subsequent reporting of the account required the inclusion of a "Disputed" status flag.
NCS willfully failed to comply with federal consumer law in two distinct ways:
Failure to Verify: NCS never sent a single shred of debt verification or underlying validation documentation.
Unlawful Collection Activity & Failure to Flag: Despite failing to verify the debt, NCS completely ignored the statutory freeze and continued actively reporting the collection trade line to the major credit bureaus without marking it as "Disputed".
This statutory non-compliance was maintained on my report for nearly five consecutive months, constituting a systemic, willful pattern of illegal credit reporting. On May 7, 2026, this unverified, unflagged trade line directly caused me a demonstrable, real-world financial injury: I received a formal Adverse Action notice from Linea Apartments denying my rental housing application solely based on the unverified "Collection from Apartment Community" reported by NCS (Exhibit D).
NCS was sent a formal notice to cure this violation via certified mail on May 15, 2026 (Exhibit E.1, E.2). USPS tracking confirms it was successfully delivered to their PO Box on May 20, 2026 (Exhibit F). They failed to comply within the 14-business-day window provided.

☑ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

---

## What would be a fair resolution to this issue?

Edit this section

1.Immediate and permanent deletion of Account No. 6038159 from all consumer credit bureaus (Experian, Equifax, TransUnion, and tenant screening agencies like RentGrow, Inc.).

2. A formal letter via electronic correspondence of cllosure from NCS confirming the account

is closed, zeroed out, and that collection authority has been permanently surrendered back to the original owner.

---

Edit this section

### 9 attachments

View uploaded documents by clicking on the file name. Documents that pass virus scanning are typically available within 2 minutes of upload.

Exhibit B.png (4.5 MB)

Exhibit D.PNG (554.3 KB)

Exhibit E.2.jpeg (3.3 MB)

Exhbit C.PNG (693.8 KB)

Exhibit F.PNG (611.7 KB)

Exhibit H.eml (21 KB)

Exhibit A.pdf (101.8 KB)

Exhibit G.pdf (36.5 KB)

Exhibit E.1.jpeg (3.7 MB)

---

# Step 4

## What company is this complaint about?

Edit this section

#### COMPANY INFORMATION

NATIONAL CREDIT SYSTEMS,INC.

#### INVOLVEMENT

Debt Collector

#### SOCIAL SECURITY NUMBER (LAST FOUR DIGITS)

••••

#### COMPANY WHERE THE DEBT ORIGINALLY CAME FROM

Haven Realty Capital

#### INVOLVEMENT

Creditor

#### SOCIAL SECURITY NUMBER (LAST FOUR DIGITS)

••••

#### COMPLAINT ALSO SUBMITTED TO THIS COMPANY?

No

#### ATTEMPTED TO FIX WITH THIS COMPANY?

Yes

#### DID YOU REQUEST INFORMATION FROM THE COMPANY?

Yes

#### WHAT INFORMATION DID YOU REQUEST?

I provided a contractually compliant 2-month notice to vacate, but the original creditor instead prematurely advanced an unverified, disputed balance to collection, bypassing my direct attempts to resolve the account history."

#### DID THE COMPANY PROVIDE THIS INFORMATION?

No

# Step 5

## What people are involved?

Edit this section

**YOUR CONTACT INFORMATION**

Eric Sundman

esundman@outlook.com
9193970213

225 W Huron St Apt 202 Chicago, Illinois
60654 United States

**YOUR PREFERRED LANGUAGE**

English

**YOUR DEMOGRAPHIC INFORMATION**

**AGE**

37

**SEX**

Male

**RACE**

White

**HOUSEHOLD SIZE INCLUDING TOTAL NUMBER OF ADULTS AND CHILDREN**

1

**COMBINED ANNUAL HOUSEHOLD INCOME**

$200,000+

EXHIBIT L



Experian

# NATIONAL CREDIT SYSTEM

Balance updated Jul 26, 2026

$9,472 — Balance

$9,472 — Original balance

Original creditor: QUEEN CITY TOWNES APARTMENTS

Date opened: Dec 23, 2025 — 7 mos

## Payment history

Collection account. $9,472 past due as of Jul 2026.

As of Dec 2025

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2026 | C | C | C | C | C | C | C | • | • | • | • | • |

C Collection

## Account info

Account number: 603815X

Dashboard | Credit | Money | Insurance | Cards & Loans

Info

Add a Title

IMG_1985.PNG

July 26, 2026 10:19:11 PM

Screenshot

No lens information

1320 × 2699 238 KB PNG

Add a Caption

Add a Keyword

Add Faces

Assign a Location

EXHIBIT M


INTUIT creditkarma
NATIONAL CREDIT SYSTEMS
Reported: Jul. 19, 2026
$9,472.00
Needs Attention
Overview
You have 100% left to pay on this collection.
Balance
$9472
Highest Balance
$9472
Opened
Dec. 23, 2025 (7 mos)
Account status
Open
Type
Derogatory
Responsibility
Individual
Remarks
Placed for collection
Account information disputed by consumer
Account information disputed by consumer
Original Creditor Name
QUEEN CITY TOWNES APARTMENTS
Closed
No Info
See an error?
Dispute
For you
Cards
Loans
Insurance
Money
Info
Add a Title
IMG_1986.PNG
July 26, 2026 10:21:22 PM
Screenshot
No lens information
1320 × 2731
259 KB
PNG
Add a Caption
Add a Keyword
Add Faces
Assign a Location

EXHIBIT N



Account Details

NATIONAL CREDIT SYST

Last reported Jul 24, 2026

$9,472
Open balance

NATIONAL CREDIT SYST
Original creditor

SNAPSHOT

| | |
|---|---|
| Opened | **Dec 23, 2025 (7 mos)** |
| Account status | **Open** |
| Type | **--** |
| Responsibility | **Individual** |
| Remarks | **Consumer disputes - reinvestigation in progress**<br>**Consumer disputes this account information** |
| Original creditor name | **NATIONAL CREDIT SYST** |

Report info

**Take a look at some options to help your score**

Average score improvement if you take care of a collection **in the first 2 years**

Removed

Info
Add a Title
IMG_1987.PNG
July 26, 2026 10:22:22 PM
Screenshot
No lens information
1320 × 2682 252 KB PNG
Add a Caption
Add a Keyword
Add Faces
Assign a Location