IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CONNOR SUNDMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-06690 |
| | § | Honorable Joan H. Lefkow |
| NATIONAL CREDIT SYSTEMS, INC., | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant National Credit Systems, Inc. ("NCS" or "Defendant") files this amended answer to respond to Plaintiff's *First Amended Complaint* (the "Complaint") filed by Plaintiff Eric Connor Sundman ("Plaintiff") and would show the Court as follows:

## A. ADMISSIONS & DENIALS

Defendant makes the following admissions, denials and other responses to Plaintiff's averments, by corresponding paragraph number used in the Complaint:

### I. JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, which confer federal question jurisdiction upon United States District Courts.

**Response:** Defendant does not contest federal question jurisdiction as alleged in Paragraph 1, reserving the right to challenge standing.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this judicial district and a substantial part of the events, omissions, and concrete

financial, exclusionary housing, and severe professional injuries giving rise to these claims occurred within the Eastern Division of the Northern District of Illinois.

**Response:** Defendant does not currently contest venue as alleged in Paragraph 2.

## II. PARTIES

3. Plaintiff Eric Connor Sundman is a natural person, a consumer, and a resident of the City of Chicago, Cook County, Illinois. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

**Response:** Defendant admits that Plaintiff is a natural person, but lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 3.

4. Defendant National Credit Systems, Inc. is a foreign business corporation regularly engaged in the collection of consumer debts throughout the United States using the instrumentalities of interstate commerce and the mails, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant is also a "furnisher of information" to consumer reporting agencies under 15 U.S.C. § 1681s-2.

**Response:** Defendant admits the allegations in Paragraph 4.

## III. FACTUAL ALLEGATIONS

5. The underlying matter arises from a purported consumer debt allegedly originating from a residential lease agreement with Queen City Townes Apartments.

**Response:** Defendant admits the debt resulted from a breach of Plaintiff's lease agreement with NC Old Pineville, LLC d/b/a Queen City Townes managed by Haven Homes (collectively the "Original Creditor") as Plaintiff terminated the lease early, failed to provide the required 60 days' notice to vacate under the terms of the lease, failed to pay all rent (rent concessions reinstated due to default), and vacated with damages to the apartment, however, Defendant lacks sufficient

knowledge or information to admit or deny any remaining allegations in Paragraph 5.

6. This purported debt constitutes a "debt" under 15 U.S.C. § 1692a(5) because it reflects an obligation incurred primarily for personal, family, or household purposes.

**Response:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 6.

7. On or about November 26, 2025, Defendant transmitted an initial collection correspondence regarding the purported consumer debt, which was received by Plaintiff on or about December 8, 2025.

**Response:** Defendant admits the allegations in Paragraph 7 (confirming Defendant sent Plaintiff a 1692g/Reg F compliant initial validation letter) but lacks sufficient information to know the date it was received by Plaintiff.

8. This initial correspondence explicitly stated: "If you write to us by January 5, 2026, we must stop collection on any amount you dispute until we send you information that shows you owe the debt."

**Response:** Defendant admits that the quote in Paragraph 8 is recited on Defendant's form 1692g letter sent to Plaintiff.

9. On December 8, 2025, well within the statutory thirty-day window established under 15 U.S.C. § 1692g(a), Plaintiff executed Defendant's provided dispute form, checking the boxes indicating "I want to dispute the debt" and "This is not my debt", and subjoining a handwritten instruction stating "DO NOT CONTACT".

**Response:** Plaintiff's response to the 1692g letter speaks for itself, and Defendant admits receipt of Plaintiff's letter coding it as a cease and desist response along with verification request, processed on or about December 8, 2025, but lacks sufficient knowledge or information to admit

or deny the remaining allegations in Paragraph 9.

10. Defendant successfully received Plaintiff's formal dispute at its corporate office via mail on December 16, 2025 (See Exhibit A).

**Response:** Defendant admits receipt of Plaintiff's cease and desist response along with his dispute, processed on or about December 19, 2025, but lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 10.

11. Defendant explicitly admitted in Paragraph 14 of its judicial Answer that it received and processed the dispute and verification request on or about December 18, 2025.

**Response:** Defendant admits that Plaintiff's response was processed on or about December 19, 2025, and amends any previous answer otherwise, in response to Paragraph 11.

12. Pursuant to 15 U.S.C. § 1692g(b), upon receipt of a consumer's written dispute within the thirty-day window, a debt collector shall cease collection of the debt until the debt collector obtains verification of the debt and a copy of such verification is mailed to the consumer by the debt collector.

**Response:** Paragraph 12 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 12 does contain any factual averments regarding Defendant, Defendant denies same.

13. Under established federal law, a consumer's accompanying request to cease communication does not strip a debt collector of its right, nor absolve it of its absolute statutory obligation, to mail the required debt verification to the consumer. Mailing a mandatory statutory verification notice does not constitute an unlawful collection contact under a cease and desist order, and a debt collector cannot use a cease and desist request as an administrative pretext to bypass the mandatory mailing requirement while actively continuing backend reporting.

**Response:** Paragraph 13 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 13 does contain any factual averments regarding Defendant, Defendant denies same.

14. In Paragraph 15 of its judicial Answer, Defendant explicitly admitted that its verification process consisted entirely of internally confirming data with the Original Creditor on or about December 22, 2025.

**Response:** Defendant denies the allegations in Paragraph 14, but admits verifying the account with the Original Creditor.

15. Defendant's pleading contains no assertion, and internal records confirm, that Defendant ever mailed a copy of such verification to the Plaintiff as strictly mandated by 15 U.S.C. § 1692g(b).

**Response:** Defendant denies the allegations in Paragraph 15.

16. Defendant attempts to shield itself from liability by asserting it applied an internal "XB" Metro2 compliance code to denote a consumer dispute (See Answer, AD8).

**Response:** Defendant denies the allegations in Paragraph 16, but admits that the addition of the "XB" code mitigates any alleged damages.

17. Under the FCRA, 15 U.S.C. § 1681s-2(b), and the FDCPA, 15 U.S.C. § 1692e(8), the mere application of a dispute notation code does not absolve a debt collector of its separate, absolute statutory obligation to cease reporting entirely under a § 1692g(b) validation freeze, nor does it sanitize the transmission of unverified collection data to consumer reporting agencies.

**Response:** Paragraph 17 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 17 does contain any factual averments regarding Defendant, Defendant denies same.

18. Defendant further attempts to evade its statutory duties by asserting that the underlying debt belongs to the Original Creditor and that Plaintiff's dispute represents an improper “collateral attack” requiring Defendant to act as a tribunal (See Answer, AD4).

**Response:** Defendant denies the allegations in Paragraph 18, but admits asserting the defense referenced, and contends that such defense prevents Plaintiff’s recovery.

19. A debt collector’s statutory obligation to verify a debt and halt collection under 15 U.S.C. § 1692g(b) is an independent, strict liability mandate that cannot be bypassed or shifted back to the original landlord.

**Response:** Paragraph 19 contains only legal argument and not any factual averments about Plaintiff’s claim for Defendant to admit or deny. To the extent that Paragraph 19 does contain any factual averments regarding Defendant, Defendant denies same.

20. Despite completely failing to execute the mandatory statutory mailing requirement, Defendant entirely ignored the statutory freeze and actively reported, updated, and maintained a damaging collection trade line on Plaintiff's consumer credit profiles across Equifax, Experian, and TransUnion monthly from January 2026 through at least July 2026 (See Exhibit J).

**Response:** Defendant denies the allegations in Paragraph 20, but admits furnishing accurate information to the consumer reporting agencies (“CRAs”).

21. In its June 2, 2026 administrative response to Plaintiff's Consumer Financial Protection Bureau (CFPB) complaint, Defendant explicitly admitted that it ignored the statutory freeze by confirming it continued to process the account and maintain the reporting based on unverified data from the original creditor, while concurrently refusing to provide verification to Plaintiff under an alleged “confidentiality” justification (See Exhibit I).

**Response:** Defendant admits responding to the CFPB Complaint, but denies Plaintiff’s

characterization of the response as alleged in Paragraph 21, as the response speaks for itself.

22. Defendant's assertion of "confidentiality" to withhold debt validation from the targeted consumer is a bad-faith distortion of federal law. Under 15 U.S.C. § 1692g(b), the mandate is absolute: a collector must either provide the verification to the consumer or completely cease all collection and reporting activities.

**Response:** Paragraph 22 contains a mischaracterization of the CFPB response that indicates only that the agreement between Defendant and its client is confidential, not the verification documents that were provided to Plaintiff by the Original Creditor and confirmed by Defendant, therefore, Defendant denies the allegations in Paragraph 22.

23. Irrespective of any backend reporting codes, the prominent placement and monthly maintenance of the unverified collection trade line operated as an absolute bar to housing eligibility.

**Response:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 23, but admits accurate data furnishing.

24. On May 7, 2026, as a direct and proximate result of Defendant's unlawful, unverified credit reporting, Plaintiff suffered concrete financial and exclusionary injury when he received a formal Adverse Action notice from Linea Apartments, denying his rental housing application explicitly due to the "Collection from Apartment Community" reported by Defendant (See Exhibit D).

**Response:** Defendant denies the allegations in Paragraph 24, particularly as Defendant cannot establish any "but for" causation. Plaintiff has been provided verification of the debt, and Defendant furnished accurate information to the CRAs. Accurate information furnished to the CRAs, nor any other conduct of Defendant, caused any alleged damages; rather, Plaintiff's breach

of the subject lease with the Original Creditor and subsequent failure to resolve the debt caused Plaintiff's alleged damages.

25. On May 18, 2026, Plaintiff transmitted a formal administrative letter to Defendant via certified mail, delivered on May 20, 2026, offering a good-faith settlement to resolve the matter and avoid litigation (See Exhibits C, E.1, E.2, and F). Defendant allowed the window to lapse without responding and subsequently asserted in Paragraph 22 of its judicial Answer that it possessed no obligation to respond to such an offer.

**Response:** Defendant admits receiving Plaintiff's demand as described in Paragraph 25, but denies such receipt or other activity constitutes any violation as Defendant has no obligation to respond to such a demand.

26. Defendant has maintained and continues to actively report the unverified collection trade line even after being formally served with the initial Complaint, and notably after filing its formal Answer in this action on July 21, 2026, in ongoing, reckless, and willful defiance of the FDCPA statutory freeze and independent regulatory requirements.

**Response:** Defendant denies the allegations in Paragraph 26, but admits furnishing accurate account information regarding the account to the CRAs.

27. As a direct result of Defendant's ongoing, willful illegal reporting, Plaintiff faces severe downstream professional damage and an active, operational threat to his professional standing, including potential regulatory investigation and licensure revocation. The ongoing publication of this unverified collection trade line directly compromises Plaintiff's mandatory disclosures under the character and financial suitability requirements of the Illinois Gaming Board, thereby creating an immediate threat to his specialized credentials and livelihood. Consequently, Plaintiff has suffered concrete actual damages in the baseline amount of $100,000.00.

**Response:** Defendant denies the allegations in Paragraph 27, particularly as Defendant cannot establish any "but for" causation. Plaintiff has been provided with verification of the debt, and Defendant furnished accurate information to the CRAs. Accurate information furnished to the CRAs, nor any other conduct of Defendant, caused any alleged damages; rather, Plaintiff's breach of the subject lease with the Original Creditor, and subsequent failure to resolve the debt caused Plaintiff's damages.

**COUNT I - NATIONAL CREDIT SYSTEMS**
**FAIR DEBT COLLECTION PRACTICES ACT VIOLATION - 15 U.S.C. § 1692G(B)**
**FAILURE TO CEASE COLLECTION ACTIVITIES DURING STATUTORY VALIDATION FREEZE**

28. Plaintiff realleges and incorporates by reference paragraphs 1 through 27 as if fully set forth herein.

**Response:** In response to Paragraph 28, Defendant re-alleges and incorporates by reference each of its responses to the preceding paragraphs as though fully set forth herein.

29. Pursuant to 15 U.S.C. § 1692g(b), Defendant was strictly mandated to cease all collection activities, including credit reporting, until it obtained verification of the debt and mailed a copy of such verification to the Plaintiff.

**Response:** Paragraph 29 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 29 does contain any factual averments, Defendant denies same.

30. Defendant was at all times, within its legal rights, and under an absolute statutory obligation, to mail the validation documentation to Plaintiff regardless of the accompanying cease and desist instruction, as a required response to a consumer dispute is an exempted statutory communication under 15 U.S.C. § 1692c(c).

**Response:** Paragraph 30 contains only legal argument and not any factual averments about

Plaintiff’s claim for Defendant to admit or deny. To the extent that Paragraph 30 does contain any factual averments, Defendant denies same.

31. Defendant admits it received the dispute on or about December 18, 2025, but failed to mail any verification of the debt to Plaintiff, choosing instead to internally verify the data with the original landlord on December 22, 2025.

**Response:** Defendant admits receipt of Plaintiff’s cease and desist response along with a dispute and verification request, processed on or about December 19, 2025, and verifying the debt with the Original Creditor on December 22, 2025, but denies the remaining allegations in Paragraph 31.

32. Despite failing to execute the mandatory statutory mailing requirement, Defendant actively reported, updated, and maintained the collection trade line on Plaintiff's Equifax, Experian, and TransUnion credit profiles monthly from January 2026 through at least July 2026.

**Response:** Defendant denies the allegations in Paragraph 32 other than to admit furnishing accurate account information to the CRAs.

33. Under established federal jurisprudence, updating, reporting, or maintaining a trade line with a consumer reporting agency after a timely validation request is received, but before verification is mailed to the consumer, constitutes a prohibited “collection activity” under 15 U.S.C. § 1692g(b). See Purnell v. Arrow Financial Services, LLC, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); see also Quale v. Unifund CCR Partners, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010).

**Response:** Paragraph 33 contains only legal argument and not any factual averments about Plaintiff’s claim for Defendant to admit or deny. To the extent that Paragraph 33 does contain any factual averments, Defendant denies same.

34. Furthermore, this prohibition is explicitly codified by the Consumer Financial Protection Bureau under Regulation F, 12 C.F.R. § 1006.38, which strictly prohibits a debt collector from reporting or communicating information about a debt to a consumer reporting agency after receiving a timely written dispute until the mandatory verification is mailed to the consumer.

**Response:** Paragraph 34 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 34 does contain any factual averments, Defendant denies same.

35. As a direct and proximate result of Defendant's willful violations of 15 U.S.C. § 1692g(b), Plaintiff suffered severe actual damages, including emotional distress, loss of credit opportunities, the denial of his housing application at Linea Apartments on May 7, 2026, and acute professional risk, including potential license revocation and threat to his professional credentials caused by the ongoing publication of an unverified collection trade line, totaling an amount of no less than $100,000.00.

**Response:** Defendant denies the allegations in Paragraph 35, particularly as Defendant cannot establish any "but for" causation. Plaintiff has been provided verification of the debt, and Defendant furnished accurate information to the CRAs. Accurate information furnished to the CRAs, nor any other conduct of Defendant, caused any alleged damages; rather, Plaintiff's breach of the subject lease with the Original Creditor and subsequent failure to resolve the debt caused Plaintiff's alleged damages.

## COUNT II – NATIONAL CREDIT SYSTEMS
## FAIR DEBT COLLECTION PRACTICES ACT VIOLATION, 15 U.S.C. § 1692E(8)
## PUBLICATION OF FALSE, INACCURATE, OR UNVERIFIED CREDIT INFORMATION

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 as if fully

set forth herein.

**Response:** In response to Paragraph 36, Defendant re-alleges and incorporates by reference each of its responses to the preceding paragraphs as though fully set forth herein.

37. 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

**Response:** Paragraph 37 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 37 does contain any factual averments, Defendant denies same.

38. Specifically, 15 U.S.C. § 1692e(8) prohibits communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

**Response:** Paragraph 38 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 38 does contain any factual averments, Defendant denies same.

39. Defendant knew or should have known that the debt was unverified and subject to a mandatory statutory freeze, rendering any ongoing positive validation to consumer reporting agencies false and misleading.

**Response:** Defendant denies the allegations in Paragraph 39.

40. Defendant's internal allocation of backend Metro2 reporting codes (such as an "XB" dispute notation) does not insulate it from liability where the collector concurrently transmits active, damaging collection updates while completely failing its absolute statutory mandate to provide verification. See Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317 (7th Cir. 2016) (confirming that FDCPA mandates are strict liability and debt collectors cannot evade compliance

duties by pointing to the files or instructions of the original creditor).

**Response:** Paragraph 40 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 40 does contain any factual averments, Defendant denies same.

41. Defendant willfully and/or negligently communicated inaccurate, unverified collection data to Equifax, Experian, and TransUnion monthly from January 2026 through at least May 2026.

**Response:** Defendant denies the allegations in Paragraph 41.

42. As a direct and proximate result of Defendant's willful violations of 15 U.S.C. § 1692e(8), Plaintiff suffered concrete economic and non-economic injuries, including the denial of essential housing and severe professional reputational harm, causing actual damages of no less than $100,000.00.

**Response:** Defendant denies the allegations in Paragraph 42, particularly as Defendant cannot establish any "but for" causation. Plaintiff has been provided verification of the debt, and Defendant furnished accurate information to the CRAs. Accurate information furnished to the CRAs, nor any other conduct of Defendant, caused any alleged damages; rather, Plaintiff's breach of the subject lease with the Original Creditor and subsequent failure to resolve the debt caused Plaintiff's alleged damages.

## COUNT III – NATIONAL CREDIT SYSTEMS<br>FAIR CREDIT REPORTING ACT VIOLATION, 15 U.S.C § 1681S-2(B)<br>FAILURE TO CONDUCT A REASONABLE INVESTIGATION AFTER RECEIVING NOTICE OF DISPUTES

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

**Response:** In response to Paragraph 43, Defendant re-alleges and incorporates by reference each of its responses to the preceding paragraphs as though fully set forth herein.

44. Upon receiving notice of a consumer dispute from a credit reporting agency regarding the accuracy or completeness of information furnished, 15 U.S.C. § 1681s-2(b) requires a furnisher to conduct a reasonable investigation, review all relevant information provided, and modify, delete, or permanently block inaccurate or unverified data.

**Response:** Paragraph 44 contains only legal argument and not any factual averments about Plaintiff's claim for Defendant to admit or deny. To the extent that Paragraph 44 does contain any factual averments, Defendant denies same.

45. Defendant received automated notices of dispute from Equifax and TransUnion regarding Plaintiff's account.

**Response:** Defendant admits the allegations in Paragraph 45 (so long as Plaintiff refers to ACDVs received after Plaintiff filed this lawsuit.

46. Defendant's investigation was legally insufficient, unreasonable, and executed with reckless disregard because it consisted solely of internally mirroring the Original Creditor's unverified data on December 22, 2025, while failing to cross-reference its own omission of the mandatory FDCPA validation mailer.

**Response:** Defendant denies the allegations in Paragraph 46.

47. Defendant willfully and/or negligently verified the unverified debt to the consumer reporting agencies, causing the continued publication of a damaging and inaccurate collection trade line.

**Response:** Defendant denies the allegations in Paragraph 47.

48. As a direct and proximate result of Defendant's willful failure to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b), Plaintiff was denied housing at Linea Apartments, suffered ongoing damage to his credit reputation, and sustained severe threat to his professional compliance credentials, resulting in actual damages of no less than $100,000.00.

**Response:** Defendant denies the allegations in Paragraph 48, particularly as Defendant cannot establish any "but for" causation. Plaintiff was provided verification of the debt, and Defendant furnished accurate information to the CRAs. Accurate information furnished to the CRAs, nor any other conduct of Defendant, caused any alleged damages; rather, Plaintiff's breach of the subject lease with the Original Creditor and subsequent failure to resolve the debt caused Plaintiff's alleged damages.

## COUNT IV
## ONGOING AND WILLFUL VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. § 1692G(B) AND 1692E
## POST-FILING WILLFUL NON-COMPLIANCE

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

**Response:** In response to Paragraph 49, Defendant re-alleges and incorporates by reference each of its responses to the preceding paragraphs as though fully set forth herein.

50. Defendant was formally served with the Initial Complaint in this action, providing actual, undeniable legal notice of its ongoing statutory violations, its failure to mail validation, and the concrete housing injury caused to Plaintiff.

**Response:** Defendant admits receipt of Plaintiff's Initial Complaint, but denies the remaining allegations in Paragraph 50.

51. Despite possessing actual notice via formal judicial service and further confirmed by the filing of its formal judicial Answer on July 21, 2026, Defendant deliberately elected to

maintain, update, and actively publish the unverified, disputed collection trade line to Equifax, Experian, and TransUnion.

**Response:** Defendant admits filing its Answer to Plaintiff's Complaint on July 21, 2026, but denies the allegations in Paragraph 51, other than furnishing accurate account information to the CRAs.

52. Each monthly update and transmission of credit data executed by Defendant after the filing, service, and answering of this action constitutes a separate, independent, and willful violation of the FDCPA statutory freeze under 15 U.S.C. § 1692g(b) and the prohibition against misleading representations under 15 U.S.C. § 1692e. See Consumer Financial Protection Bureau (CFPB) Regulation F, 12 C.F.R. § 1006.38.

**Response:** Defendant denies the allegations in Paragraph 52, particularly as Defendant received documents verifying the account during this litigation.

53. Defendant's continued reporting post-service and post-answer cannot be characterized as a bona fide operational error; rather, it represents a conscious decision to flout federal statutory mandates in open defiance of an active lawsuit.

**Response:** Defendant denies the allegations in Paragraph 53, particularly as Defendant received documents verifying the account during this litigation.

54. Defendant's post-filing conduct demonstrates a reckless and willful disregard for Plaintiff's federally protected rights under the FDCPA.

**Response:** Defendant denies the allegations in Paragraph 54, particularly as Defendant received documents verifying the account during this litigation.

55. As a direct and proximate result of Defendant's ongoing, post-filing, and post-answer violations, Plaintiff has suffered extended and compounding damage to his credit

reputation, prolonged emotional distress, the continuous exclusion from housing opportunities, and a continuous operational threat to his professional licensure, entitling Plaintiff to maximum statutory damages and compounding actual damages of no less than $100,000.00.

**Response:** Defendant denies the allegations in Paragraph 55, particularly as Defendant cannot establish any "but for" causation. Plaintiff has been provided verification of the debt, and Defendant furnished accurate information to the CRAs. Accurate information furnished to the CRAs, nor any other conduct of Defendant, caused any alleged damages; rather, Plaintiff's breach of the subject lease with the Original Creditor, and subsequent failure to resolve the debt caused Plaintiff's alleged damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric Connor Sundman respectfully requests that this Court enter judgment in his favor and against Defendant National Credit Systems, Inc., and award the following relief:

A. Actual damages in the baseline amount of $100,000.00 for financial loss, housing exclusion, acute professional injury, and emotional distress;

B. Statutory damages pursuant to 15 U.S.C. § 1692k and 15 U.S.C. § 1681n;

C. Punitive damages pursuant to 15 U.S.C. § 1681n in an amount to be determined at trial to punish Defendant's willful, bad-faith statutory non-compliance and continued illegal credit reporting;

D. An order directing Defendant to immediately and permanently delete the unverified trade line from Equifax, Experian, and TransUnion;

E. Pre-judgment and post-judgment interest;

F. An award of costs incurred in maintaining this action pursuant to 15 U.S.C. § 1692k(a)(3) and 15 U.S.C. § 1681n(a)(3); and

G. Such other and further relief as this Court deems just and proper.

**Response:** Defendant denies that Plaintiff is entitled to any of the requests for relief, including subsections (A) through (G).

**Defendant denies any factual averments made in the Complaint that are not specifically admitted above.**

DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

**Response:** This unnumbered paragraph and demand for jury trial is without any factual averment(s) to admit or deny.

## B. AFFIRMATIVE DEFENSES

As Plaintiff fails to state a claim for which relief can be granted on one or more of Plaintiff's claims, Defendant reserves the right to file a motion to dismiss or motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b)(1), (6) and/or 12(c). In addition, Defendant reserves the right to seek to amend or supplement its affirmative defenses to include any defenses of which it is not presently aware, as discovery and further investigation are needed.

AD1. Lack of Standing. Plaintiff's claims against Defendant are barred in whole or in part by the fact Plaintiff has no actual or concrete damages caused by any unlawful conduct by Defendant and thus no standing. *See e.g., Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Even more so as Defendant served a Rule 68 Offer of Judgment providing Plaintiff with all relief that could be granted.

AD2. Satisfied Obligations of FDCPA / No obligations under FCRA. Defendant maintains that it properly and timely changed the information furnished related to the alleged subject debt to the consumer reporting agencies as disputed; confirmed that the Original Creditor verified the debt to Plaintiff; and complied with Plaintiff's cease and desist request. During the pendency of this Litigation, Defendant provided Plaintiff with validation documents. In addition, Plaintiff does not allege an actionable claim under the FCRA, particularly as Section 1681s-2(a) does not provide a right of action and Section 1681s-2(b) requires the receipt of an indirect dispute establishing an actionable inaccuracy.

AD3. Dispute is not an Actionable Inaccuracy under the FCRA. Plaintiff's FCRA claim against Defendant does not allege an actionable inaccuracy included in a dispute to the CRAs, thus any FCRA claim is barred. Plaintiff failed to provide objectively and readily verifiable information regarding any alleged dispute of the debt. Rather, Plaintiff relies solely on

AD4. Improper Collateral Attack. Plaintiff's claims related to any alleged dispute of the debt and FCRA claim are barred in whole or in part because Plaintiff alleges a dispute that could only be resolved by a direct attack against the Original Creditor regarding the validity of the debt, not a collateral attack requiring Defendant to act as a tribunal. Only a trier of fact could establish Plaintiff's defenses to liability. Such direct action is a pre-requisite to any relief sought in this action.

AD5. Debt is Accurate / Reasonable Reliance on Original Creditor. Plaintiff's claims (as well as any alleged damages) against Defendant are barred (or lack causation) because (a) the subject debt is accurate, (b) the Original Creditor verified the subject debt as accurate, and/or (c) Defendant is entitled to reasonably rely on the information provided by the Original Creditor.

AD6. Comparative Negligence, Unclean Hands, Breach of Lease. Plaintiff's claims are barred in whole or in part by Plaintiff's breach of the subject Lease, comparative negligence, failure to mitigate, and/or unclean hands.

AD7. Intervening / Supervening Cause. Plaintiff's claims are barred in whole or in part by the actions of third parties or intervening and superseding actions of others, including the Original Creditor.

AD8. Defendant's Mitigation. Plaintiff's claims against, and damages sought from, Defendant are barred in whole or in part, by the fact that the information furnished by Defendant included the XB compliance code that prevents the account from negatively or positively affecting Plaintiff's credit score as a disputed account.

AD9. Bona Fide Error. Even if Plaintiffs prove the allegations in the Complaint, Defendant is not liable to Plaintiff because the FDCPA exculpates collectors who make mistakes notwithstanding the use of reasonable procedures adopted to prevent making them. Defendant has policies and procedures to prevent or avoid the claims asserted by Plaintiff, including the alleged failure to comply with Sections 1692g and 1692e. Any actions or omissions resulting in the alleged FDCPA violations were not intentional and resulted from a bona fide mistake, notwithstanding the use of such reasonable procedures Defendant has adopted to avoid such actions or omissions. *See* 15 U.S.C. § 1692k(c).

**PRAYER**

Defendant requests a judgment that Plaintiff takes nothing on his claims against Defendant, that Plaintiff's claims against Defendant are dismissed and that Defendant recovers its attorneys' fees and costs, if appropriate. Defendant prays for such other and further relief to which Defendant may be entitled.

Dated: September 1, 2026

Respectfully submitted,

By: *s/Craig C. Smith*
Craig C. Smith

CC SMITH LAW LLC
130 W. Liberty Dr., Suite 211
Wheaton, IL 60187
Direct: 630-415-7896
csmith@ccsmithlaw.com

ATTORNEY FOR DEFENDANT
NATIONAL CREDIT SYSTEMS, INC.

CERTIFICATE OF SERVICE

On September 1, 2026, I electronically submitted the foregoing document using the ECF system with the Clerk of Court for the U.S. District Court of Illinois, thereby providing service to all parties including.

Eric Connor Sundman — VIA ECF
*Plaintiff , Pro Se*

By: *s/Craig C. Smith*
Craig C. Smith